# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KASHMIR DENNIS** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 25-5731 |
| | : | |
| **CORRECTIONAL OFFICER HEADS,** | : | |
| **CORRECTIONAL OFFICER KILSON,** | : | |
| **CORRECTIONAL OFFICER HENRY,** | : | |
| **THE CITY OF PHILADELPHIA** | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                                                         December 3, 2025

Incarcerated persons claiming the city which employs the correctional officers in their facilities must plead more than conclusions as to how the city did not train its officers leading to their alleged harm. The incarcerated person must plead facts allowing us to plausibly infer the city showed deliberate indifference to the incarcerated person's alleged harm. We today review an incarcerated person's second attempt to allege the city's failure to train correctional officers caused him harm. The incarcerated person, represented by experienced counsel, again did not plead how the city can be liable for its correctional officers' alleged conduct based on its alleged failure to train. We dismiss the incarcerated person's claim against the city as his counsel has now twice been unable to plead the city's liability.

### I. Alleged facts

The Commonwealth detained Kashmir Dennis at the Philadelphia Industrial Correctional Center.[1] The Facility's Correctional Officers Heads, Kilson, and Henry attacked Mr. Dennis on October 7, 2023 by forcibly removing his shoes, handcuffing him, and throwing him down a stairway while handcuffed.[2] Mr. Dennis suffered a broken nose and fractured ribs, right knee, and

right wrist as a result of the fall down the stairway.[3] Correctional Officers Heads, Kilson, and Henry choked Mr. Dennis at an unidentified time.[4] Mr. Dennis does not plead injury suffered from the alleged choking incident.

## II. Analysis

Mr. Dennis sued the three Correctional Officers in their individual capacities under section 1983 alleging excessive force and cruel and unusual punishment under the Eighth and Fourteenth Amendments, conspiracy to violate his civil rights under section 1985, and asserting Pennsylvania common law claims for assault and battery and intentional infliction of emotional distress.[5]

He also sued, through private counsel, the City of Philadelphia under the civil rights laws for liability under *Monell*.[6] He concludes the City and its undefined "prisons department":

- Failed to discipline, train, supervise or "otherwise sanction" Correctional Officers Heads, Kilson, and Henry for "violat[ing] the rights of citizens by choking citizens, including the plaintiff's, thus encouraging [Correctional Officers Heads, Kilson, and Henry] in this case to engage in assaulting prison inmates of the City of Philadelphia by choking";[7]

- Failed to train Correctional Officers Heads, Kilson, and Henry "with respect to the constitutional, statutory[,] and departmental limits of their authority including refraining from assaulting prison inmates of the City of Philadelphia by illegally handcuffing and throwing inmates down stairways."[8]

Mr. Dennis alleges the City and its "prisons department" had "actual notice of a need to train, supervise, discipline, or terminate" Officers Heads, Kilson, and Henry without identifying which harm (choking or handcuffing/throwing down stairway or both) because "other similar incidents of assaults on prison inmates" involving Correctional Officers Heads, Kilson, and Henry "have occurred in the past" without identifying what "other similar incidents" occurred.[9] The City now moves to dismiss the municipal claim asserted against it.[10] Mr. Dennis opposes.[11] We agree with the City and dismiss Mr. Dennis's claims against the City with leave to amend.

2

We begin with an uncontroverted principle in our civil rights law: the City cannot be held liable under section 1983 for the unconstitutional acts of its employees on a *respondeat superior* theory.[12] Liability against the City extends only to its own conduct and it is not vicariously liable for the conduct of its employees.[13] The City can only be liable if its policy or custom caused the alleged constitutional violation.[14]

Our Court of Appeals instructs there are two ways a civil rights claim against the City may proceed: (1) a plaintiff may allege a municipality's unconstitutional policy or custom caused his injuries; or (2) his injuries were caused by a failure or inadequacy by the municipality reflecting "a deliberate or conscious choice."[15] The second avenue developed in the failure-to-train context and "applies to other failures and inadequacies by municipalities, including those related to supervision and discipline of its police officers."[16]

Mr. Dennis proceeds under the second avenue; a failure-to-train theory. He is not required to allege an unconstitutional municipal policy or custom.[17] But he must allege the City's failure to train or supervise its correctional officers amounts to "deliberate indifference" to the rights of persons with whom they will come into contact at the correctional facility.[18]

Mr. Dennis must allege facts showing "(1) [the City] know[s] that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."[19] Our Court of Appeals directs this municipal liability *Monell* inquiry to focus on "whether a municipality was deliberately indifferent to the risk of a *constitutional violation*."[20]

Deliberate indifference in a failure-to-train theory may be shown by a "pattern of similar constitutional violations by untrained employees."[21] A pattern of violations "ordinarily" puts the

3

City's decisionmakers on notice new training is necessary and the "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability."[22] If the City is not on notice its training is deficient, the City's decisionmakers "can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."[23]

Deliberate indifference may also be shown where the need for training is "so obvious" the failure to do so amounts to deliberate indifference to constitutional rights.[24] This concept is known as a "single-incident" failure to train and depends on "[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights."[25]

Mr. Dennis must also allege causation to sustain a claim based on a failure-to-train theory.[26] He must identify a deficiency in the training and its causal nexus to his injury.[27] We are directed by our Court of Appeals our causation analysis must focus on "adequacy of the training program in relation to the tasks the particular officers must perform."[28] Liability cannot be based on a showing employees "could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury"; the focus is on whether "the injury [could] have been avoided had the employee been trained under a program that was not deficient in the identified respect."[29]

> **A. Mr. Dennis did not plausibly plead a failure to train or supervise correctional officers on assault by choking.**

The City moves to dismiss Mr. Dennis's *Monell* claim based on a failure to discipline, train, supervise or "otherwise sanction" Correctional Officers Heads, Kilson, and Henry for assaulting unidentified "citizens" and (possibly) Mr. Dennis by choking.[30] The City makes two

4

arguments: (1) there are no alleged facts supporting deliberate indifference; and (2) even if Mr. Dennis sufficiently pleaded facts to support the City's deliberate indifference, he did not plead facts to support the causal nexus between the failure to train on choking and his injuries.

Mr. Dennis chose not to address the City's motion to dismiss the failure-to-train claims in his amended Complaint based on choking, suggesting he abandoned this claim. We nonetheless considered the amended Complaint as pleaded and conclude Mr. Dennis does not plausibly state a *Monell* claim against the City based on a failure to train Corrections Officers on choking.

Mr. Dennis pleads one fact regarding choking: the City failed to discipline, train, supervise, or otherwise sanction Correctional Officers Heads, Kilson, and Henry thereby "encouraging" them to "engage in assaulting prison inmates … by choking." It is unclear whether Correctional Officers Heads, Kilson, and Henry choked Mr. Dennis, and if so, when the choking occurred, and if Mr. Dennis suffered injury.

There are no facts to support deliberate indifference either through a pattern of similar constitutional violations or a single-incident required to plead deliberate indifference. Mr. Dennis vaguely alleges the City and "its prisons department" had "actual notice" of a need to train "prior to the incident in question, as other similar incidents of assaults on prison inmates have occurred in the past involving" the three Correctional Officers.[31] Mr. Dennis does not identify the "incident in question" and we are unsure whether Mr. Dennis refers to the alleged choking incident or the handcuffing and throwing down the stairway incident. There are no allegations identifying "similar incidents of assaults on prison inmates" occurring "in the past" involving Correctional Officers Heads, Kilson, and Henry. We cannot reasonably infer the City had notice of the need for training but failed to do so to plausibly plead deliberate indifference.

Mr. Dennis did not plead facts to support causation on a claim against the City after two attempts. We are obligated to study pleaded facts allowing us to plausibly infer a causal nexus between the failure to train with regard to choking and Mr. Dennis's injury to the extent he pleads injury as a result of a choking incident or incidents.

Mr. Dennis does not do so. In the absence of Mr. Dennis's response to the City's motion to dismiss based on choking and assessing the deficiencies in his amended Complaint, we dismiss his claims based on choking but will allow Mr. Dennis to amend his complaint if he can do so in good faith.

### B. Mr. Dennis did not plausibly plead a failure to train or supervise correctional officers on assault by handcuffing and throwing down stairways.

The City next argues we must dismiss Mr. Dennis's failure-to-train claim based on the removal of his shoes, handcuffing, and throwing him down the stairway because Mr. Dennis—after two attempts—does nothing more than recite the elements of a *Monell* claim.

Mr. Dennis does little to address the City's arguments. He responds he alleges an assault on October 7, 2023 and the City is responsible for training and supervising its correctional officers, the City failed to act "when on notice of the propensity" of Correctional Officers Heads, Kilson, and Henry to "violate the rights of citizens" through unidentified "prior incidents of misconduct" by the three Correctional Officers.[32] These are conclusory allegations devoid of fact.

Mr. Dennis argues the "source of the [City's] notice" are "prior civil lawsuits, internal affairs complaints, and complaints from the general community" as described in his amended Complaint.[33] There are no such allegations in the amended Complaint and Mr. Dennis cannot amend his pleading through his brief in opposition to the motion to dismiss.[34]

Mr. Dennis does not allege facts from which we may plausibly infer the City acted with deliberate indifference for purposes of a failure-to-train claim. There are no facts to support a

6

pattern of similar constitutional violations putting the City on notice. Mr. Dennis instead simply concludes the City had "actual notice" of a need to train. He also fails to allege facts to support a causal nexus between the City's failure-to-train and his injury.

Mr. Dennis does not meet the pleading standard required by the Supreme Court in Rule 8 and Rule 12(b)(6). We are guided by reasoning from two of our colleagues. Judge Gallagher dismissed a *Monell* claim almost four months ago against the City of Lancaster for failing to train its police officers after an officer pushed Ms. Steva to the ground at a political rally.[35] Judge Gallagher found Ms. Stava pleaded only conclusory allegations without specific facts alleging a pattern of similar constitutional violations putting the City of Lancaster on notice, explaining Ms. Stava's allegations the City's Police Department should have known its training, policies, and procedures were deficient and did not plausibly plead deliberate indifference.[36]

Judge Leeson dismissed a *Monell* claim against a Berks County nursing home based on a failure-to-train theory.[37] The administrators of an estate alleged the county nursing home failed to train its employees on adequate care resulting in the death of the decedent. Judge Leeson dismissed the *Monell* municipal liability claim, finding the administrators failed to sufficiently allege deliberate indifference through a pattern of similar constitutional violations by untrained employees.[38] Judge Leeson reasoned the absence of a single non-conclusory allegation regarding the employer county's conduct rendered the administrator "necessarily unable to allege . . . the need for more or different training . . . [is] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [Defendants] can reasonably be said to have been deliberately indifferent to the need."[39]

7

Mr. Dennis's allegations are similarly deficient; his allegations are conclusory without facts to sufficiently allege the City's deliberate indifference. He does not plausibly state a *Monell* municipal liability claim against the City after two attempts.

### III. Conclusion

We grant the City's and Officer Kilson's Motion to dismiss the *Monell* claim without prejudice.

---

[1] ECF 10, ¶ 10 (first amended Complaint).

[2] *Id.* Mr. Dennis does not plead the first name of the correctional officers.

[3] *Id.* ¶ 12.

[4] *Id.* ¶ 20.

[5] *Id.* ¶ 17. 42 U.S.C. §1983, 1985. Mr. Dennis served only the City of Philadelphia and Correctional Officer Kilson with the Complaint. He has not served Correctional Officer Heads and Correctional Officer Henry with the summons or amended Complaint. We expect counsel to address diligent efforts to effect service upon the two other correctional officers under today's accompanying Order.

[6] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[7] ECF 10, ¶ 20.

[8] *Id.* ¶ 21.

[9] *Id.* ¶ 22.

[10] ECF 12.

[11] ECF 13.

[12] *Monell*, 436 U.S. at 691. Congress through section 1983 provides, in relevant part: "Every person who, under color of any statute . . . of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983.

[13] *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citations omitted). The Supreme Court in *Monell* held "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or

injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690 (footnote omitted).

[14] *McTernan v. City of York*, 564 F.3d 636, 657–58 (3d Cir. 2009) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)); *see also Porter v. City of Phila.*, 975 F.3d 374, 383 (3d Cir. 2020) (a municipality is only liable under section 1983 for constitutional violations caused by its official policies and customs) (citations omitted).

[15] *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citing *Est. of Roman v. City of Newark*, 914 F.3d 789, 798–99 (3d Cir. 2019)).

[16] *Id.*

[17] *Id.* at 105–06; *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014).

[18] *Forrest*, 930 F.3d at 106.

[19] *Id.* (citing *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)).

[20] *Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020) (citing *Thomas*, 749 F.3d at 222).

[21] *Thomas*, 749 F.3d at 223 (quoting *Connick*, 563 U.S. at 62).

[22] *Id.* (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997)).

[23] *Id.* (quoting *Connick*, 563 U.S. at 62).

[24] *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)).

[25] *Id.* at 223–24 (quoting *Bryan Cnty.*, 500 U.S. at 409).

[26] *Id.* at 226.

[27] *Id.* (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1030 (3d Cir. 1991)).

[28] *Id.* (citing *Canton*, 489 U.S. at 390).

[29] *Id.* (citing *Canton*, 489 U.S. at 391).

[30] A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint under the plausibility pleading standard. *Zanetich v. Wal-Mart Stores E., Inc.*, 123 F.4th 128, 138 (3d Cir. 2024). A plaintiff must include "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678). "'Plausibly' does not mean 'probably,' but 'it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 291 (2025) (quoting *Iqbal*, 556 U.S. at 678). A pleading offering "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) we "identify allegations that . . . 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' . . . in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations . . . and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]' . . ., we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted).

[31] Mr. Dennis alleges the City and its "prisons department" had actual notice "prior to the incident in question" of other similar assaults by Correctional Officers Heads, Kilson, and Henry. We infer Mr. Dennis alleges deliberate indifference by an alleged "pattern of similar constitutional violations." ECF 10, ¶ 22.

[32] ECF 13 at 5.

[33] *Id.*

[34] *Frederico v. Home Depot*, 507 F.3d 188, 201–02 (3d Cir. 2007) (citations omitted).

[35] *Stava v. City of Lancaster*, No. 25-2392, 2025 WL 2301188, at *3–4 (E.D. Pa. Aug. 8, 2025).

[36] *Id.*

[37] *Schlaybach v. Berks Heim Nursing & Rehab.*, 434 F. Supp. 3d 342 (E.D. Pa. 2020).

[38] *Id.* at 352.

[39] *Id.* at 354 (quoting *Canton*, 489 U.S. at 390).